J-S44012-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN ST. JOHN, III | : | No. 982 MDA 2022 |

Appeal from the Order Entered July 8, 2022
In the Court of Common Pleas of Clinton County
Criminal Division at No(s): CP-18-CR-0000246-2021

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:        **FILED APRIL 10, 2023**

The Commonwealth brings this appeal from the order denying its motion for recusal of the trial judge in this criminal matter. Upon careful review, we conclude that this Court has jurisdiction to hear the case and we affirm the determination of the trial court.

The Commonwealth alleges that, at a residential gathering on February 26, 2021, St. John took a revolver from a kitchen drawer, pointed it at Jakob Lee Haines and pulled the trigger. Haines sustained a bullet wound to the center of his chest. When members of the Lock Haven City Police Department arrived, St. John was kneeling over Haines and applying pressure to his chest. The Clinton County Coroner pronounced Haines dead at the scene. There were

---

[*] Retired Senior Judge assigned to the Superior Court.

three eyewitnesses to the event. In a criminal information filed July 22, 2021, the Commonwealth charged St. John with one count of general criminal homicide, two counts of aggravated assault, and one count of recklessly endangering another person.

On May 20, 2022, the Commonwealth filed a motion for recusal. In its motion, the Commonwealth alleged that President Judge Craig P. Miller, who was scheduled to preside at the trial set for July 2022, had personal and professional conflicts that created an appearance of partiality. Specifically, the Commonwealth alleged that President Judge Miller and defense counsel, George Lepley, Esq., had a personal and professional relationship. In addition, the Commonwealth claimed that President Judge Miller had extensive familiarity with St. John's mother, Bethy Jo St. John, because he had represented Ms. St. John in two criminal matters prior to his elevation to the bench.

The trial court held a hearing on the motion on July 7, 2022. At the conclusion of the hearing the trial court entered an order denying the Commonwealth's request for recusal. The Commonwealth filed this timely notice of appeal, in which it invoked our jurisdiction pursuant to Pa.R.A.P. 311(d) and Pa.R.A.P. 313. Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925. Although the Commonwealth set forth multiple points for relief in its Rule 1925(b) statement, the sole issue presented in the

Commonwealth's appellate brief is whether the trial court abused its discretion in denying the motion for recusal. *See* Commonwealth's Brief at 6.

Before we address the merits of the Commonwealth's claim, we first consider whether this appeal is properly before us for review because the "appealability of an order directly implicates the jurisdiction of the court asked to review the order." *Commonwealth v. Brister*, 16 A.3d 530, 533 (Pa. Super. 2011) (citation omitted).[1] The order denying the Commonwealth's motion for recusal is an interlocutory order and cannot be considered final under Pa.R.A.P. 341. However, our Supreme Court has held that the Commonwealth is entitled to an interlocutory appeal as of right from a trial court's denial of a Commonwealth motion seeking recusal. *See Commonwealth v. White*, 910 A.2d 648, 655 (Pa. 2006). The Commonwealth must comply with Pa.R.A.P. 311(d) and certify in its notice of appeal that the denial of the motion for recusal substantially handicaps prosecution of the case. *See id*. In addition, this Court held that an order denying a Commonwealth motion for recusal is appealable under Pa.R.A.P. 313. *See Commonwealth v. Stevenson*, 829 A.2d 701, 704 (Pa. Super. 2003). The *Stevenson* Court reasoned that an appeal is permissible from the collateral order because, due to double jeopardy protections, the

---

[1] We note that the trial court, in its Rule 1925(a) opinion, has suggested that this appeal by the Commonwealth is improper and should be quashed. *See* Trial Court Opinion, 8/3/22, at 15-21.

- 3 -

Commonwealth is otherwise precluded from seeking review of its motion for recusal if the defendant is acquitted. ***See id.***

Accordingly, we conclude that the order denying the Commonwealth's request for recusal is appealable under both Rule 311(d) and Rule 313. We further observe the Commonwealth has cited to both Rules in its notice of appeal and properly expressed that "the Collateral Order will terminate or substantially handicap the prosecution." ***See*** Notice of Appeal, 7/12/22, at 1. Consequently, we possess jurisdiction to review this matter. Having so determined, we now address the merits of the issue presented.

The Commonwealth argues that the trial court abused its discretion in denying the Commonwealth's motion for recusal because there is a substantial doubt as to the trial judge's ability to preside impartially. ***See*** Commonwealth's Brief at 22-30. In support of this claim, the Commonwealth contends that the trial judge had "long-term, close personal and professional ties" with defense counsel. ***Id***. at 23-24. The Commonwealth offers brief reviews of multiple cases in which defense counsel and the trial judge had acted as co-defense counsel when the trial judge was still an attorney. ***See id***. at 24-25. Further, the Commonwealth adds to its reasons for recusal the fact that the trial judge, when he was a defense attorney, represented St. John's mother in two unrelated criminal matters. ***See id***. at 24-25. Ultimately, the Commonwealth asserts that the trial judge has completely ignored the relevant portions of the recusal test that requires the jurist to consider public

perception and the appearance of impropriety that the court's dealings and relationships create.

We note that the analysis of a judge's ability to be impartial is inherently a subjective one:

> If a party questions the impartiality of a judge, the proper recourse is a motion for recusal, requesting that the judge make an independent, self-analysis of the ability to be impartial. If content with that inner examination, the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This assessment is a personal and unreviewable decision that only the jurist can make.

***Commonwealth v. Luketic***, 162 A.3d 1149, 1158 (Pa. Super. 2017) (citation omitted).

"Our standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential." ***Commonwealth v. Postie***, 110 A.3d 1034, 1037 (Pa. Super. 2015) (citation omitted). "The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion." ***Commonwealth v. Sarvey***, 199 A.3d 436, 454 (Pa. Super. 2018) (citation omitted).

"This Court presumes judges of this Commonwealth are honorable, fair and competent, and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice." ***Luketic***, 162 A.3d at 1157 (citation and quotation marks omitted). We have

reiterated that "[j]udges in the smaller counties commonly preside over multiple proceedings involving a given defendant and his or her friends and family, and that fact, in and of itself, is not indicative of bias." *Sarvey*, 199 A.3d at 454 (citation omitted).

In addressing the request for recusal and assessing its ability to act as a proper jurist, the trial court offered the following:

> This [c]ourt has found previously and again finds that the Commonwealth has not produced any evidence establishing bias, prejudice, or unfairness necessitating recusal. The Commonwealth has alleged that two (2) professional relationships that the [u]ndersigned has had while practicing law necessitates recusal. [T]he [u]ndersigned had a professional interaction with [d]efendant St. John's mother as a client. Further, … the [u]ndersigned did not even practice in the same office or firm with Attorney Lepley. The [u]ndersigned has conducted the independent self-analysis of the [u]ndersigned's ability to be impartial as required by decisions of the Appellate Courts of Pennsylvania. As indicated above, this assessment is personal and an unreviewable decision only this jurist is able to undertake. The [u]ndersigned finds that the Undersigned can clearly be impartial, that the professional relationships that the (u)ndersigned has had with Ms. St. John and Attorney Lepley has not impacted the [u]ndersigned's duty to be impartial and, therefore, would urge the Superior Court to affirm this Court's decision.

Trial Court Opinion, 8/3/22, at 13.

However, as the Commonwealth asserts, the lower court here failed to make the additional analysis regarding public perception and appearance of impropriety. As indicated by our caselaw, if content with that inner examination, addressing an independent, self-analysis of the ability to be impartial, "the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would

tend to undermine public confidence in the judiciary." **Commonwealth v. Kane**, 188 A.3d 1217, 1225 (Pa. Super. 2018).

Our case law has recognized several ways a litigant can establish that a judge should be disqualified due to the appearance of impropriety. First, a litigant can establish that the jurist can reasonably be considered to harbor a personal bias against the litigant. **See Commonwealth v. Darush**, 459 A.2d 727, 732 (Pa. 1983) (requiring disqualification of sentencing judge who could not refute an allegation that he had said "[w]e want to get people like him [appellant] out of Potter County"). A second method involves establishing that the jurist could reasonably be considered to have a personal interest in the outcome of the litigant's case. **See In Interest of McFall**, 617 A.2d 707, 713 (Pa. 1992) (holding that a trial judge, who cooperated with the FBI as an undercover agent following allegations of bribery, had a real and tangible bias in the criminal cases heard by her, because she was subject to prosecution for her actions by the prosecuting authority in each of the cases before). A third way we have recognized for establishing an appearance of impropriety is a showing that a jurist has a bias against a particular class of litigants. **See Commonwealth v. Lemanski**, 529 A.2d 1085, 1089 (Pa. Super. 1987) (finding that a defendant adequately supported allegations of personal bias against a "particular class of litigants" by reference to comments made from the bench and in a local newspaper regarding an opinion and predetermined policy that in all drug cases deserve the maximum sentence).

Here, the Commonwealth has not presented evidence to establish that the trial judge should be disqualified based upon an appearance of impropriety. First, the Commonwealth has not alleged that the trial judge harbors a personal bias against the Commonwealth.

Second, the Commonwealth has not established, beyond mere conjecture, that the trial court could reasonably be considered to have a personal interest in the outcome of the case. The Commonwealth has relied upon the trial judge having had connections, prior to joining the bench, with defense counsel and St. John's mother to support an allegation of a personal interest in this criminal matter. At the recusal hearing, the trial court offered the following comments regarding his relationship with Attorney Lepley and the Commonwealth's allegation that the two were "life-long friends:"

> The Court has had numerous professional relationships and continues to have numerous professional relationships with numerous attorneys and does not see that as a disqualifying basis on any matter. … The Commonwealth has offered no evidence … that Attorney Lepley and this Court are life-long friends. … The Court has several life-long friends, and Attorney Lepley is not one of them. … [T]he Commonwealth has not offered any evidence of Attorney Lepley and this Court socializing together since this Court took the [b]ench in 2008. And prior to that, the socializing together was all related to this Court being involved in criminal trials as co-counsel with Attorney Lepley.

N.T., 7/7/22, at 51-52.

In addition, the trial judge offered the following concerning his connection with Ms. St. John:

> [T]he Court has represented [Ms. St. John] in criminal actions in Clinton and Lycoming County. … This Court can truthfully say

- 8 -

that this Court could not identify Ms. St. John from the crowd today when the Court came in. And the Court could not, prior to Ms. St. John's testifying, pick her out of a lineup or any photographic lineup. This Court has absolutely little recollection of said contact and has not had any contact with Ms. St. John since the criminal matter ended. … And this Court has not completed any legal work for anyone else in the family other than Ms. St. John's, which representation occurred approximately 16 years ago.

*Id*. at 52-53. These comments by the trial court reflect that the Commonwealth's allegations about significant contacts between the trial judge and Attorney Lepley and Ms. St. John are unfounded. Accordingly, we conclude the Commonwealth has failed to support a claim that the trial judge had a personal interest in the outcome of this criminal matter.

Finally, we observe that the Commonwealth has not alleged let alone established an appearance of impropriety by a showing that the trial judge has a bias against a particular class of litigant, which would include either the Commonwealth or St. John. Although the trial court may not have conducted a distinct review of the Commonwealth's claim that his continued involvement in the case creates an appearance of impropriety, the trial judge, nevertheless, conducted the necessary assessment of his ability to preside impartially and whether he should be disqualified based upon allegations of an appearance of impropriety. Therefore, we discern no error on the part of the trial court in denying the Commonwealth's motion seeking recusal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>04/10/2023</u>